# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1623

_____

Henry E. Lyons

*Plaintiff - Appellee*

v.

F. Wayne Vaught; Reginald Bassa

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 14, 2015
Filed: March 24, 2015

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Henry Lyons taught a self-developed course for seven semesters as a part-time lecturer at the University of Missouri at Kansas City (UMKC). He was not offered a position for the Spring 2012 semester and his course was dropped from UMKC's course catalog. Lyons brought this 42 U.S.C. § 1983 damage action in state court against three UMKC administrators, alleging unlawful retaliation in violation of his First Amendment free speech rights as a public employee. Defendants removed and

moved to dismiss, arguing the Petition for Damages failed to allege that they were personally involved in the retaliatory conduct. Lyons filed an Amended Complaint and voluntarily dismissed his claim against UMKC Chancellor Leo Morton. The remaining defendants -- F. Wayne Vaught, Dean of the College of Arts & Sciences, and Reginald Bassa, Director of the Program for Adult College Education -- again moved to dismiss, arguing the Amended Complaint failed to state a claim and they are entitled to qualified immunity. Defendants appeal the denial of this motion.

We have jurisdiction over the denial of a motion to dismiss based on qualified immunity, including "whether a particular complaint sufficiently alleges a clearly established violation of law." Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). We accept as true the facts alleged in Lyons's Amended Complaint and review *de novo* whether the complaint "state[d] a claim to relief that is plausible on its face." Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (quotation omitted). Applying these standards, we reverse.

**I.**

The Amended Complaint alleged that Lyons gave a student athlete a grade of "F" in the Fall 2010 semester. The student invoked UMKC's grade-appeal process in January 2011. Lyons met with Bassa and defended his grading. Bassa determined the student should be allowed to submit a second midterm paper before resolving the appeal. "Concerned about the legitimacy of the appeals process, as well as the preferential treatment afforded to this Student Athlete and others," the Amended Complaint alleged, Lyons complained to Dean Vaught, who referred the student's appeal to the Academic Standards Committee for the College of Letters and Science. The Committee determined the student should be allowed to write a second paper. Lyons "challenged the determination" to Dean Vaught, who upheld the Committee's ruling. In November 2011, the student submitted a second midterm paper, "a

-2-

committee" appointed to grade the paper gave it a 75% grade, and Vaught instructed the registrar to change the student's course grade to D+, a passing grade.

In late November 2011, the Amended Complaint alleged, Lyons -- accompanied by two "community leaders" and by the former Deputy Chancellor for Diversity -- met with Chancellor Leo Morton "to express [Lyons's] concerns about the preferential academic treatment afforded to student athletes on the UMKC campus." Lyons told Morton that preferential grading for athletes was unfair to other students and was "a growing problem on the UMKC campus" that "could lead to adverse publicity and sanctions." Lyons requested that Morton "undertake a comprehensive investigation into the preferential treatment afforded to student athletes." Morton said he was not prepared to take action. After this meeting, "Lyons also spoke with Bassa and Vaught, and voiced the same concerns he communicated to Chancellor Morton." "Both Bassa and Vaught said they would contact Chancellor Morton to discuss the situation moving forward." Lyons heard nothing further from Morton, Bassa, or Vaught regarding his concerns. He received no advance notice that his course would be eliminated for the Spring 2012 semester.

## II.

Lyons sued Bassa and Vaught for First Amendment retaliation, alleging they did not recommend Lyons for reappointment as a part-time lecturer in retaliation for his protected speech concerning preferential treatment for student-athletes. To plead a prima facie case of First Amendment retaliation, Lyons must allege that (1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action. Davison v. City of Minneapolis, 490 F.3d 648, 654-55 (8th Cir. 2007).

In Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." In Lane v. Franks, 134 S. Ct. 2369, 2379 (2014), the Court in ruling that a college president was entitled to qualified immunity clarified that "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Thus, to decide whether a public employee's speech is protected by the First Amendment, a court must first determine whether the employee spoke as a citizen on a matter of public concern. This is a question of law for the court. See McGee v. Pub. Water Supply, Dist. 2, 471 F.3d 918, 920 (8th Cir. 2006).[1]

Lyons's initial complaint failed to state a claim because he did not allege that Morton, Vaught, or Bassa took the adverse action of not reappointing Lyons for the Spring 2012 semester. The Amended Complaint cured this defect by alleging that his prior appointments were with "the recommendation and approval" of Vaught and Bassa, and by dismissing the claim against Chancellor Morton. But the Amended Complaint, like its predecessor, failed to allege what speech was protected by the First Amendment (an inexcusable but not fatal pleading error).

---

[1]If the court determines the public employee spoke as a citizen on a matter of public concern, it must then determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti, 547 U.S. at 418. This question can rarely, if ever, be determined on a Rule 12(b)(6) motion to dismiss the public employee's complaint. But at the summary judgment stage, if the defendant has presented evidence that the employee's speech "adversely affected the efficiency of the department," the required "fact-intensive balancing test . . . can rarely be considered 'clearly established' for purposes of the . . . qualified immunity standard." Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir. 1992).

Vaught and Bassa moved to dismiss Lyons's First Amended Complaint as failing to state a claim under Garcetti, arguing that "Lyons's speech was uttered in response to a student's appeal of the grade Lyons had assigned," and therefore "Lyons cannot 'plausibly' establish that his complaints about preferential treatment of student athletes was not . . . due to his role as a UMKC lecturer." Alternatively, defendants argued they are entitled to qualified immunity because "it was not 'clearly established' that Lyons's speech in response to a student's grade appeal would be protected by the Constitution." In response, Lyons argued that the "only alleged protected speech at issue in this dispute is Lyons' speech directed to Chancellor Morton, two community leaders, and [the] former Deputy Chancellor for Diversity . . . in late November 2011." His statements at that meeting regarding preferential treatment of student athletes dealt with a matter of public concern and were "not made pursuant to an official job function or duty," even if related to his employment as a part-time lecturer.

In denying the motion to dismiss, the district court carefully reviewed the First Amended Complaint and the Garcetti standard that precludes First Amendment protection when public employees make statements pursuant to their official duties. "Lyons's statements during the Student Athlete's grade appeal process were likely part of his official duties," the court noted, but his First Amendment retaliation claim is based "only on his statements to Chancellor Morton." The Amended Complaint does not contain enough factual detail to determine if Lyons's statements to Chancellor Morton at the meeting attended by community leaders were part of the student appeal process, "or if the meeting focused solely on the broader public concern that UMKC's processes undermined its educational mission for the benefit of athletes." Therefore, the court denied the motion to dismiss because it was "unable at this stage in the litigation to conclude whether Lyons's claim is barred by Garcetti." The court denied qualified immunity because the allegations "plausibly suggest a meeting among Lyons, Chancellor Morton, and community leaders, which focused on generalized concerns . . . and was unrelated to Lyons's duties."

-5-

On appeal, defendants argue the district court erred by segregating, for purposes of its Garcetti analysis, Lyons's alleged statements to Chancellor Morton at the November 2011 meeting from his earlier alleged complaints to defendants about the "preferential academic treatment" afforded the student athlete in the appeals process. But this misinterprets Lyons's admittedly ambiguous Amended Complaint. In paragraphs 18-64, Lyons alleged that preferential treatment was one of his concerns in the student appeal process, but did not allege that he voiced that concern to Bassa and Vaught. Thus, Lyons correctly argued to the district court that the only alleged protected speech came in paragraphs 65-77, which described the meeting with Chancellor Morton. The district court reviewed those distinct allegations and concluded (i) the meeting concerned speech about a matter of public concern, and (ii) the court should not dismiss the Amended Complaint under Garcetti because it could not determine *from this pleading* whether Lyons was speaking as a citizen outside the student appeal process. We agree with this Rule 12(b)(6) analysis.

However, this conclusion does not resolve the qualified immunity appeal. Defendants argue they are entitled to qualified immunity because (i) the only claimed protected speech was made to Chancellor Morton, a former defendant who Lyons voluntarily dismissed, at a meeting Bassa and Vaught did not attend; and (ii) the Amended Complaint failed to allege that Bassa and Vaught were aware of the alleged protected speech or even knew of Lyons's meeting with Chancellor Morton and the community leaders. Instead, the Amended Complaint merely alleged, "After the meeting with Morton, Lyons also spoke with Bassa and Vaught, and voiced the same concerns." Thus, Lyons failed to allege plausibly that his *only* constitutionally protected speech could have been a substantial or motivating factor in defendants' alleged adverse employment action.

After careful review of the Amended Complaint, we agree with this contention. The third element of a public employee's First Amendment retaliation claim is proof of a causal connection between the protected activity and the adverse employment

action. "It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). Thus, while the issue of causal connection is usually fact-intensive, many cases have dismissed retaliation complaints that failed to allege that the defendant taking adverse action knew of the protected activity. See Gagliardi v. Sullivan, 513 F.3d 301, 308 (1st Cir. 2008); Gorman v. Bail, 947 F. Supp. 2d 509, 525 (E.D. Pa. 2013); Gadling-Cole v. West Chester Univ., 868 F. Supp. 2d 390, 401 (E.D. Pa. 2012); Amos v. D.C., 589 F. Supp. 2d 48, 56 (D.D.C. 2008); accord Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 750 (10th Cir. 2010) (affirming summary judgment on this ground); Gorum v. Sessoms, 561 F.3d 179, 188 (3d Cir. 2009) (same); Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006) (granting qualified immunity to a defendant who had no knowledge of the plaintiff's protected activity). Lyons does not allege that Vaught or Bassa knew of Lyons's speech to Morton when they declined to recommend him for reappointment, only that he had "voiced the same concerns" to Vaught and Bassa after the meeting with Morton, an allegation plausibly related to the student appeal process, not to any unrelated speech as a citizen.

In these circumstances, we must assume at the Rule 12 stage that Vaught and Bassa failed to recommend or approve Lyons's reappointment because of his speech during the student appeal process. But this was unprotected speech, and therefore it was not clearly established that failure to reappoint for this reason was wrongful retaliation because Lyons also made allegedly unrelated, protected speech at a meeting Vaught and Bassa did not attend, when it is not alleged that they were apprised of that speech and its nature and purpose. Accordingly, Vaught and Bassa are entitled to qualified immunity from Lyons's First Amendment retaliation claim.

The Order of the district court dated March 3, 2014, is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____