# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1062

_____

Henry E. Lyons

*Plaintiff - Appellee*

v.

F. Wayne Vaught; Reginald Bassa

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 8, 2017
Filed: November 22, 2017

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Henry Lyons worked as a part-time lecturer at the University of Missouri Kansas City ("UMKC") for seven semesters, teaching a self-developed Career and Life Development course. He was not asked to return for the Spring 2012 semester. In this 42 U.S.C. § 1983 action, Lyons alleges that defendants' decision not to renew his contract was retaliation for his criticism of UMKC's preferential treatment of student athletes and therefore a violation of his free speech rights as a public

employee.  The individual defendants appeal the district court order denying their motion to dismiss Lyons's damage claims because they are entitled to qualified immunity.  Reviewing the denial of qualified immunity *de novo*, we reverse.

## I.

Lyons's First Amended Complaint ("FAC") alleged that in Fall 2010 he gave a student athlete an "F" grade in Lyons's course.  The student challenged his grade through UMKC's appeal process; Lyons submitted a "formal written response" defending his grade.  The "Grade Appeal Committee," comprised of Reginald Bassa, Director of UMKC's Program for Adult Education, and the Department Chair, determined the student should be allowed to submit a second midterm paper.  Lyons appealed this decision and complained to F. Wayne Vaught, Interim Dean of the College of Arts and Sciences.  Vaught referred the student's appeal to the Academic Standards Committee in September 2011.  The Committee determined the student should be allowed to submit a second paper.  Lyons again complained to Vaught, who upheld the Committee's decision.  A committee appointed to grade the student's second paper gave it a 75% grade, and Vaught instructed the registrar to change the student's grade to D+ in November 2011.

In late November, Lyons arranged a meeting with UMKC Chancellor Leo E. Morton and invited three others to attend:  UMKC's former Deputy Chancellor for Diversity, Access, and Equity; a past Chairman of the Minority & Cultural Affairs Committee and past Vice President of UMKC's Alumni Association Board; and the President of the local NAACP chapter.  Lyons expressed concerns about preferential treatment of student athletes at UMKC, summarized other professors' complaints about the problem, and noted that such treatment could lead to adverse publicity and sanctions.  Lyons requested that Morton "undertake a comprehensive investigation into the preferential treatment afforded to student athletes."  Morton said he declined to get involved with student-faculty matters on campus.  Lyons never heard back

regarding his complaints. He was not offered a part-time lecturer contract for the following semester, contracts that "are offered based on the recommendation and approval" of Vaught and Bassa.

Lyons initially sued Morton, Vaught, and Bassa in state court, alleging unlawful First Amendment retaliation. He voluntarily dismissed Chancellor Morton after defendants removed the case to federal court. Vaught and Bassa moved to dismiss on grounds of qualified immunity and failure to state a claim. The district court denied the motion, and defendants appealed. We agreed with the court that dismissal for failure to state a claim was properly denied because, while Lyons's speech during the grade-appeal process was not protected against public-employer retaliation, it was not clear from the ambiguous FAC whether his speech at the meeting with Chancellor Morton was connected to the appeal process, or whether Lyons spoke at the meeting as a citizen on a matter of public concern. However, our review of the FAC found no allegation that Vaught and Bassa were ever apprised of Lyons's speech at the meeting with Morton, which they did not attend. A First Amendment retaliation claim requires proof of a causal connection between the protected activity and the adverse employment action, so we concluded that Vaught and Bassa were entitled to qualified immunity because the only speech that could have prompted their adverse action was Lyons's unprotected speech during the appeal process. Lyons v. Vaught, 781 F.3d 958, 962-63 (8th Cir. 2015) ("Lyons I"). We reversed the denial of qualified immunity and remanded for further proceedings.

On remand, rather than grant defendants' qualified immunity, the district court permitted Lyons, over defendants' objection, to file a Second Amended Complaint ("SAC") to cure the FAC's fatal defects.[1] The SAC again alleged that Lyons's First

---

[1]This was error. Remand required that Lyons be "no better off" than if the motion to dismiss the FAC had been granted, so Lyons's motion to amend his Complaint again should have been considered under more rigorous post-dismissal standards. See Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1017 (8th Cir. 2013).

-3-

Amendment claim "stems from the preferential academic treatment afforded student athletes . . . one of which [sic] challenged a grade received in [Lyons's class]." It alleged that the student's grade was changed from "F" to "D+" in the appeal process but excised extensive factual allegations in the FAC describing that process. Unlike the FAC, the SAC specifically alleged that "Lyons told Bassa and Vaught what he had discussed" at the meeting with Chancellor Morton -- that student athletes "were receiving preferential treatment," that it was unfair "to let student athletes take advantage of the grading system," that this could lead to adverse publicity and sanctions, and that "he asked Chancellor Morton to undertake a comprehensive investigation into the preferential academic treatment afforded to student athletes."

Defendants moved to dismiss the SAC, arguing they are entitled to qualified immunity because at the time of the alleged retaliation, "it was not clearly established that a teacher complaining about academic favoritism towards student athletes (which included one of Plaintiff's own students) was engaged in constitutionally protected speech." The district court denied the motion, concluding it was clearly established "that a public employee had a First Amendment right to speak on matters of a public concern so long as that speech was not part of the employee's job duties." Defendants appeal. We have jurisdiction to determine whether Lyons sufficiently alleged a clearly established violation of law, accepting as true the facts alleged in Lyons's SAC. Lyons I, 781 F.3d at 960.

## II.

Qualified immunity from personal damage liability "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). "Qualified immunity attaches when an official's conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotation omitted). It "protects

-4-

all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quotation omitted). For purposes of their motion to dismiss, Defendants assume that Lyons's SAC alleged the violation of a constitutional right -- retaliation for his First Amendment protected speech at the meeting with Chancellor Morton. They argue the alleged right was not clearly established at the time of the alleged violation. See al-Kidd, 563 U.S. at 735.

The Supreme Court has repeatedly warned that "clearly established law should not be defined at a high level of generality . . . [but] must be particularized to the facts of the case." White, 137 S. Ct. at 552 (citing prior cases). Absent controlling authority, Lyons must show "a robust consensus of cases of persuasive authority." De La Rosa v. White, 852 F.3d 740, 746 (8th Cir. 2017) (quotation omitted). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate" at the time Vaught and Bassa acted. White, 137 S. Ct. at 551 (quotation omitted); see Mullenix, 136 S. Ct. at 308; Reichle v. Howards, 132 S. Ct. 2088, 2094 (2012) ("[T]he right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause.").

**III.**

To establish employer retaliation in violation of the First Amendment, a public employee must prove: "(1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action." Lyons I, 781 F.3d at 961. Although "legal issues expressly or impliedly decided" in Lyons I are the law of the case, issues outside "the four corners of that opinion" are not. McNabb v. Riley, 29 F.3d 1303, 1305 (8th Cir. 1994). Our decision in Lyons I did not address whether it was clearly

-5-

established that the First Amendment protected Lyons's speech at the meeting with Chancellor Morton from retaliation by his employer.

It is clearly established that citizens do not "relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140 (1983). However, "this does not require a grant of immunity for employee grievances." Id. at 147. "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." Id. at 149. Thus, First Amendment protection of a public employee's speech depends on a careful balance "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

In Garcetti v. Ceballos, the Supreme Court noted two inquiries in determining whether public employee speech is protected against employer retaliation:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

547 U.S. 410, 418 (2006) (quotation omitted), quoted in Lane v. Franks, 134 S. Ct. 2369, 2378 (2014). The Court granted certiorari in Garcetti to determine whether a public employee's speech criticizing government misconduct -- a matter of public concern -- was protected from employer retaliation even if made pursuant to the employee's duties. Id. at 416-17. The Court ruled such speech unprotected:

[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. . . . Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.

Id. at 421-22. In Lane, a decision after the events here at issue, the Court further explained that "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." 134 S. Ct. at 2379.[2]

Under Garcetti, when a public employee speaks on a matter of public concern pursuant to his official duties, the speech is *unprotected* against employer retaliation. Thus, for Lyons to prevail, we must conclude that, when he was not offered a lecturer's position in early 2012, it was clearly established First Amendment law that his speech on matters of public concern at the meeting with Chancellor Morton was *not* made "pursuant to [his] official duties." See 547 U.S. at 421. If it was pursuant to his official duties, he has *no* First Amendment claim. And if this question was not "beyond debate," Vaught and Morton are entitled to qualified immunity from Lyons's damage claims.[3]

_____

[2]In Lane, the Court held that an employee's truthful testimony compelled by subpoena at a corruption trial was First Amendment protected, but the defendants were entitled to qualified immunity because "Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection." 134 S. Ct. at 2382-83.

[3]We deal here with the first step of the two-step inquiry under Garcetti. If Lyons avoids dismissal at this step, the second step requires Pickering balancing of his interests as a citizen commenting on a matter of public concern and the interests of the State as public employer. See Garcetti, 547 U.S. at 418. "[A]t the summary judgment stage, if the defendant has presented evidence that the employee's speech

## IV.

Throughout this litigation, Lyons has conceded and the district court has acknowledged, correctly in our view, that his speech during the student appeal process was unprotected employee grievance. See Lyons I, 781 F.3d at 961, 963. However, in denying defendants qualified immunity, the district court concluded that the meeting with Chancellor Morton was not "part of [Lyons's] job duties," that "academic improprieties involving interscholastic athletes is an issue of public concern," that Eighth Circuit cases prior to Garcetti "clearly established that a public employee had a First Amendment right to speak on maters of a public concern so long as that speech was not part of the employee's job duties," and that Garcetti did not change that law. We disagree.

a. We first note that the court's definition of unprotected speech -- speech that is "part of" an employee's job duties -- is phrased more narrowly than the governing standard in Garcetti -- speech that is "*pursuant to*" the employee's duties. At some point, Lyons's vigorous defense of his "F" grade after the Grade Appeal Committee and the Academic Standards Committee upheld the student's appeal arguably stopped being "part of" Lyons's duties as a part-time lecturer. But participating in the appeal process, even to the point that he voluntarily initiated his own appeal to Dean Vaught, was clearly "pursuant to" his grading duties. Determining whether an employee's speech was pursuant to his official duties is a practical inquiry. Garcetti, 547 U.S. at 424. Thus, "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010). Speech is pursuant to an

---

'adversely affected the efficiency of the department,' the required 'fact-intensive balancing test can rarely be considered clearly established.'" Lyons I, 781 F.3d at 961 n.1, quoting Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir. 1992).

employee's duties if it is "part-and-parcel of" the employee's concerns about his ability to "properly execute his duties." Williams v. Dall. Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007); accord Renken v. Gregory, 541 F.3d 769, 774 (7th Cir. 2008). Characterizing unprotected speech as "part of" rather than "pursuant to" an employee's duties arguably lowers the bar in deciding whether Lyons's final "appeal" to Chancellor Morton was unrelated to his student's appeal and therefore protected.

b. The district court's conclusion that Garcetti did not affect clearly established Eighth Circuit law is simply wrong. As we explained in McGee v. Public Water Supply, District #2:

> Many First Amendment retaliation claims have . . . present[ed] the issue, as does this case, of whether the First Amendment protects a government employee from retaliation when he 'speaks upon a matter of public concern and does so in the course of his ordinary duties as a government employee.' Environmental and public safety issues are obvious examples of matters that are of concern to the general public. Our decisions prior to Garcetti were not altogether consistent in resolving whether a retaliation claim involving employee speech that falls into this third category requires Pickering balancing, which often precludes the grant of summary judgment.

471 F.3d 918, 920 (8th Cir. 2006) (citing 547 U.S. at 445 (Breyer, J., dissenting)). Applying Garcetti, we concluded that "[a] public employee's speech is not protected by the First Amendment if it 'owes its existence' to his professional responsibilities." Id. at 921. In McGee, although the employee spoke on matters of "obvious" public concern, his speech was unprotected because it was pursuant to his official duties. Id. Contrast this decision with our pre-Garcetti decision in Kincade v. City of Blue Springs, 64 F.3d 389 (8th Cir. 1995), cert. denied, 517 U.S. 1166 (1996), on which the district court relied. In Kincade, a city engineer was disciplined after complaining about a dam's funding and safety issues. Although he made this speech "in his capacity as City Engineer and pursuant to an assignment from" his employer, we held

the speech was protected. Id. at 393, 397. We rejected the employer's argument that "when a public employee speaks in his role as an employee, that speech cannot touch upon a matter of public concern." Id. at 396. This analysis would not suffice under Garcetti.

In addition to McGee, we have applied Garcetti and concluded that speech was pursuant to an employee's job duties and thus unprotected in numerous recent cases. See Bonn v. City of Omaha, 623 F.3d 587, 592 (8th Cir. 2010); Anderson v. Douglas Cty. Sch. Dist. 0001, 342 F. App'x 223, 224 (8th Cir. 2009); Bradley v. James, 479 F.3d 536, 538 (8th Cir. 2007). In other post-Garcetti cases, we concluded that a public employee's speech on a matter of public concern was unrelated to his job duties and therefore protected unless the employer's interests prevailed after Pickering balancing. See Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1113 (8th Cir. 2009); Lindsey v. City of Orrick, 491 F.3d 892, 898 (8th Cir. 2007) (employee's job duties did not "even arguably include[] sunshine law compliance").

c. Here the central focus is whether it was clearly established that Lyons's speech at the meeting with Chancellor Morton was as a citizen, not a part-time lecturer. If no student athlete had ever taken Lyons's course, or if his grading of student athletes had never been questioned, then his raising of the general issue with Chancellor Morton and others would be no different than another citizen raising the general issue. That is not this case. As we noted in Lyons I, it was not clear from the ambiguous FAC whether his speech at the meeting with Chancellor Morton was part of the student appeal process or was based on the broader public concern with UMKC's educational mission. 781 F.3d at 962.

Lyons's SAC did not eliminate that ambiguity. It alleged that his cause of action "stems from" preferential treatment of student athletes including one who "challenged a grade received" from Lyons. The FAC alleged that Lyons defended his grade through multiple stages of the UMKC appeal process. Shortly after the student

-10-

athlete's appeal was upheld more than a year later, Lyons took his concerns to the Chancellor of the University, inviting others who would likely be generally concerned with the student athlete issue. The SAC alleges Lyons then told Vaught and Bassa, the officials who upheld the student's appeal, that he asked the Chancellor to conduct a "comprehensive investigation" of student athlete grading. To Vaught and Bassa, the only plausible interpretation of this report was that Lyons had gone outside the well-established appeal process and was seeking an outside investigation of his student athlete's appeal, an inquiry that would no doubt investigate grade determinations made by Vaught, Bassa, the Academic Standards Committee, and the ad hoc committee that gave the student a 75% grade on his second paper. This would threaten to turn the UMKC grade appeal process into "a roundtable for employee complaints over internal office affairs." Connick, 461 U.S. at 149.

Under Garcetti, "a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command." Winder v. Erste, 566 F.3d 209, 215 (D.C. Cir. 2009); see Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 747 (10th Cir. 2010) (employee decisions "to go outside of their ordinary chain of command does not necessarily insulate their speech"). Did Lyons transform what began as unprotected speech pursuant to his duties as a lecturer into protected speech by virtue of speaking more broadly about the issue to both the UMKC Chancellor and "community leaders"? Perhaps. But Vaught and Bassa could reasonably conclude that Lyons spoke solely as an aggrieved lecturer in asking Chancellor Morton to investigate grading policies for student athletes. In these circumstances, Lyons has failed to show, using the particularized inquiry required, that his right to make *this* speech *in these circumstances* was clearly established.

Lyons relies on pre-Garcetti cases from other circuits involving professors' speech about academic integrity and grade inflation. See Brown v. Armenti, 247 F.3d 69, 75, 79 (3d Cir. 2001); Coats v. Pierre, 890 F.2d 728, 732 (5th Cir. 1989); Johnson

v. Lincoln Univ., 776 F.2d 443, 452 (3d Cir. 1985). But these cases did not address whether the speech at issue was pursuant to the plaintiffs' job duties, an issue that would have changed the analysis and perhaps the result in each case, as post-Garcetti cases in those circuits illustrate. See Gorum v. Sessoms, 561 F.3d 179, 185 (3d Cir. 2009) (professor's speech advising a student during disciplinary proceedings unprotected); Williams, 480 F.3d at 694 (Athletic Director's memoranda critiquing department spending and policies unprotected).[4]

We reverse the order of the district court dated December 14, 2015, and remand with directions to dismiss Lyons's damages claims on the basis of qualified immunity.

————————————————

[4]Garcetti left open the question whether its holding would apply to "speech related to scholarship or teaching." 547 U.S. at 425. In our view, this case does not involve speech related to scholarship or teaching. See Gorum, 561 F.3d at 186. But in any event, the law is no more clearly established even if Garcetti is persuasive but not controlling precedent. See Demers v. Austin, 746 F.3d 402, 417 (9th Cir. 2014).