# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2730

_____

David Mogard

*Plaintiff - Appellee*

v.

City of Milbank, Boyd Van Vooren, in his individual capacity; Jason Kettwig, in his individual capacity

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: March 12, 2019
Filed: August 8, 2019

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

David Mogard sued the City of Milbank, police chief Boyd Van Vooren, and city administrator Jason Kettwig, alleging termination without due process and in retaliation for his exercise of First Amendment free speech rights. He also asserted state-law wrongful termination. The district court denied the defendants' motion for

summary judgment based on qualified immunity. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part, affirms in part, and remands.

## I.

Mogard was hired as a Milbank patrol officer in 2008. In April 2016, after a high-speed chase, he complained to police chief Van Vooren about the patrol vehicle's tires and seatbelts. Mogard later complained to the assistant police chief, then to city administrator Kettwig and to a city council member. He also tried to schedule a meeting with the mayor. The following month, the city council—on recommendations from Van Vooren and Kettwig—voted to terminate him.

Mogard sued the City, Van Vooren, and Kettwig under 42 U.S.C. § 1983, alleging they terminated him without due process and in retaliation for his First Amendment right to publicly raise safety concerns. He also alleged wrongful termination under South Dakota law. The district court denied defendants' motion for summary judgment, concluding they were not entitled to qualified immunity because (1) Mogard's right not to be retaliated against for speaking on matter of public concern was clearly established; (2) Mogard was denied due process prior to the deprivation of a clearly-established, constitutionally-protected interest in employment and his reputation; and (3) there are issues of disputed fact about the reason for Mogard's termination. Defendants appeal the denial of qualified immunity.

"Qualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc), *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity doctrine "'permit[s] the resolution of many insubstantial claims on summary judgment'" and "avoid[s] 'subjecting government

officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). It is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232, *quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, 472 U.S. at 530. This court reviews de novo a denial of qualified immunity on summary judgment and views the evidence most favorably to the nonmoving party. *Bearden v. Lemon*, 475 F.3d 926, 929 (8th Cir. 2007).

Qualified immunity analysis requires courts to determine whether (1) the plaintiff has alleged or shown a violation of a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct. *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014). "Unless both of these questions are answered affirmatively, an appellant is entitled to qualified immunity." *Id.* "[C]ourts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Id.* at 738–39, *quoting Pearson*, 555 U.S. at 236.

A right is clearly established if—at the time of the alleged violation—"the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation omitted). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138

S. Ct. at 589 (internal quotation omitted).  It is Mogard's burden to demonstrate that the law is clearly established.  *See Morgan*, 920 F.3d at 524.

## II.

The district court denied defendants qualified immunity from Mogard's First Amendment retaliation claim, finding a genuine issue of material fact whether he was terminated because of his statements.  Viewing the facts most favorably to Mogard, even if he were terminated in retaliation for his speech, the defendants "did not violate a 'clearly established statutory or constitutional right[ ] of which a reasonable person would have known.'"  *Id.* at 523 (granting defendants qualified immunity on § 1983 First Amendment retaliation claim because it was not clearly established that plaintiff's termination violated his First Amendment rights).  Here, the disputed facts do not preclude summary judgment because the dispute does not "affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

Plaintiffs claiming employer retaliation in violation of First Amendment rights must show that they "engaged in activity protected by the First Amendment." *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018).  "A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties."  *Id.*, *citing Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  The district court concluded that Mogard's speech about patrol vehicle safety was "of course a matter of public concern."  The analysis does not end here.

The key inquiry is whether Mogard "spoke pursuant to his official duties." *Buehrle v. City of O'Fallon*, 695 F.3d 807, 812 (8th Cir. 2012).  When public employees speak on matters of public concern pursuant to their official duties, "the

employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In a similar case, state-university lecturer Henry Lyons sued university officials under § 1983, alleging their decision not to renew his contract was retaliation for his criticism of the school's preferential treatment of student athletes. *Lyons v. Vaught*, 875 F.3d 1168, 1170 (8th Cir. 2017). Lyons failed a student athlete, who then challenged his grade through the university appeals process. *Id.* Lyons unsuccessfully defended the grade in the appeal, then arranged a meeting with the university chancellor to challenge the university's treatment of student athletes. *Id.* This court held that the state-university officials were entitled to qualified immunity because it was not clearly established that Lyons's speech was constitutionally protected. *Id.* at 1175-76.

This court first found that Lyons's participation in the appeals process was "pursuant to" his job duties, even though not "part of" his job duties. *Id.* at 1174. "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Id.* Likewise, when Mogard complained to the chief and assistant chief about the features of his patrol car, he was acting "pursuant to" his job duties, regardless of whether his job required him to report on the condition of the patrol cars. *See also Groenewold*, 888 F.3d at 371 ("A public employee's speech is pursuant to his employment duties if it is part-and-parcel of the employee's concerns about his ability to properly execute his duties.").

Next, *Lyons* held that it was not clearly established that Lyons's meeting with the university chancellor was as a citizen. *Lyons*, 875 F.3d at 1175. This court explained:

Did Lyons transform what began as unprotected speech pursuant to his duties as a lecturer into protected speech by virtue of speaking more broadly about the issue to both the UMKC Chancellor and "community leaders"? Perhaps. But [defendants] could reasonably conclude that Lyons spoke solely as an aggrieved lecturer in asking Chancellor Morton to investigate grading policies for student athletes. In these circumstances, Lyons has failed to show, using the particularized inquiry required, that his right to make this speech in these circumstances was clearly established.

*Id.* at 1175–76. Even if Mogard may have transformed unprotected speech pursuant to job duties into protected speech by speaking to community leaders, defendants could reasonably conclude that Mogard was speaking solely as an aggrieved police officer. *See id.* at 1175 ("Under *Garcetti*, 'a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command.'"), *quoting* **Winder v. Erste**, 566 F.3d 209, 215 (D.C. Cir. 2009), *and citing* **Rohrbough v. Univ. of Colo. Hosp. Auth.**, 596 F.3d 741, 747 (10th Cir. 2010) (Employee decisions "to go outside of their ordinary chain of command does not necessarily insulate their speech."). Mogard's right to make this speech under these circumstances is therefore not clearly established. *Cf.* **Bonn v. City of Omaha**, 623 F.3d 587, 593 (8th Cir. 2010) (Auditor who prepared report as part of her official duties spoke pursuant to her job duties when she spoke to media about the report, so First Amendment did not protect her speech.).

Van Vooren and Kettwig are entitled to qualified immunity because it was not clearly established that Mogard's speech was constitutionally protected.

III.

Mogard also alleges the deprivation of property and liberty interests without due process. *See* **Shands v. City of Kennett**, 993 F.2d 1337, 1347 (8th Cir. 1993)

-6-

(terminated plaintiffs are entitled to procedural due process if deprived of a constitutionally protected property or liberty interest).  Denying qualified immunity to the defendants, the district court concluded that Mogard's entitlement to due process prior to the deprivation of a constitutionally protected interest in employment and in his reputation was clearly established when he was terminated.

To prove a property interest, Mogard must demonstrate that he "had a reasonable and legitimate expectation of continued employment."  *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 803 (8th Cir. 2004).  A plaintiff's "subjective and 'unilateral expectation' that [he] had 'a legitimate claim of entitlement'" to continued employment in the same position is insufficient to create a property interest.  *Id.*, *quoting* *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972).  State law and the terms of employment determine whether the plaintiff's interest in his or her job rises to the level of a constitutionally protected property right.  *Id.*  Applying South Dakota law and examining the terms of Mogard's contract and the City's employment policies and procedures, the district court correctly concluded that Mogard was an at-will employee.  As an at-will employee, Mogard cannot demonstrate a property interest in continued employment under these facts.  *See* *Hammer v. City of Osage Beach*, 318 F.3d 832, 839 n.11 (8th Cir. 2003).

At-will, public employees generally have no liberty interest in continued employment.  *Speer v. City of Wynne*, 276 F.3d 980, 984 (8th Cir. 2002), *citing* *Bishop v. Wood*, 426 U.S. 341, 348 (1976).  "An exception to this general rule exists where a state employer creates and disseminates a false and defamatory impression about the at-will employee in connection with the discharge."  *Id.*  Under those circumstances, "the Constitution's procedural due process protections require the employer to provide the employee with an opportunity to dispute the defamatory allegations in what is commonly referred to as a name-clearing hearing."  *Id.*, *citing* *Codd v. Velger*, 429 U.S. 624, 627–28 (1977).

To establish the deprivation of a liberty interest, Mogard must show that "(1) he was stigmatized by the statements; (2) those statements were made public by the administrators; and (3) he denied the stigmatizing statements." *Rush v. Perryman*, 579 F.3d 908, 913 (8th Cir. 2009). Mogard cannot satisfy the second element. There is no evidence in the record that defendants made official or intentional public statements about Mogard's termination. *See Speer*, 276 F.3d at 985 ("The requisite dissemination triggering the right to a name-clearing hearing occurs where the public employer makes stigmatizing allegations, in connection with the employee's discharge, 'in any official or intentional manner.'"), *quoting In re Selcraig*, 705 F.2d 789, 796 n. 6 (5th Cir. 1983).

The district court concluded that genuine issues of material fact exist because "[i]t may be inferred that some dissemination occurred based upon Assistant Chief of Police Corey Hooth's deposition testimony." Assistant Chief Hooth testified that he heard rumors around town that Mogard "was terminated because he had broken the law, or stolen something, things along that line, that he had done something criminally." Mogard argues that this court lacks jurisdiction to review this argument because this court cannot review the sufficiency of evidence in a qualified immunity interlocutory appeal. *See Wilson v. Lawrence Cty.*, 260 F.3d 946, 951 (8th Cir. 2001) (in qualified immunity appeal, court lacks jurisdiction to review district court finding that record creates a genuine issue of fact for trial). However, this court has jurisdiction to review "whether, given a certain set of facts, [the plaintiff] states a valid constitutional claim, and whether the claim was clearly established at the time the alleged violation occurred." *Id. See also Brayman v. United States*, 96 F.3d 1061, 1064 (8th Cir. 1996) (rejecting argument that this court lacks jurisdiction when the trial court denies qualified immunity based on material factual disputes). In a qualified immunity summary judgment appeal, this court may consider whether the facts viewed most favorably to the nonmovant constitute a violation of clearly established law. *Id.*

-8-

Viewed most favorably to Mogard, the facts do not show a violation of a constitutional right. It is Mogard's burden to demonstrate that the proffered reasons for discharge were stigmatizing, and that his employer made those reasons public. *See **Allen v. City of Pocahontas***, 340 F.3d 551, 556 (8th Cir. 2003). He has merely demonstrated that there are rumors in the community that he was fired for criminal behavior. Mogard's unsupported speculation that defendants may be the source of these rumors does not support his claim. *See **Eddings v. City of Hot Springs***, 323 F.3d 596, 601 (8th Cir. 2003) (plaintiff's "speculat[ion]" that public employer "must have leaked" stigmatizing statements to the public is insufficient to support claim for deprivation of liberty interest). *See also **Allen v. City of Pocahontas***, 340 F.3d 551, 556 (8th Cir. 2003) (affirming dismissal of liberty claim because "there is no evidence in the record to indicate that any of the Defendants made the reasons for [plaintiff's] termination public"); ***Merritt v. Reed***, 120 F.3d 124, 126 (8th Cir. 1997) (plaintiff "failed to establish a violation of a liberty interest" because he "failed to show that defendants . . . published the reasons for his dismissal"). *See also **JRT, Inc. v. TCBY Sys.***, 52 F.3d 734, 737 (8th Cir. 1995) (plaintiff's unsupported allegations "with no hint as to the source of his belief" insufficient to create genuine dispute for trial).

Because Mogard cannot demonstrate a constitutional violation, Van Vooren and Kettwig are entitled to qualified immunity. *See **Jones v. McNeese***, 746 F.3d 887, 900 (8th Cir. 2014).

IV.

"Unlike the individual officers, the City does not enjoy qualified immunity." ***Eagle v. Morgan***, 88 F.3d 620, 628 (8th Cir. 1996). "[T]he government as an entity is responsible under § 1983" if the execution of a decision "by its lawmakers . . . inflicts the injury." ***Monell v. Department of Soc. Servs. of New York***, 436 U.S. 658, 694 (1978). Mogard alleges his termination was unconstitutional. He was terminated by a city council vote. The City may be sued under § 1983 because "the action that

is alleged to be unconstitutional" came from a "decision officially adopted and promulgated by that body's officers." *Id.* at 690. *See also* **Owen v. City of Independence**, 445 U.S. 622, 650 (1980) (city not immune from § 1983 suit challenging city council resolution firing police chief). The district court properly denied qualified immunity to the City.

This court's limited jurisdiction to review the denial of qualified immunity does not include the authority to review every issue in the summary judgment order. *See* **Swint v. Chambers County Comm'n**, 514 U.S. 35, 51 (1995). However, this court may exercise "pendent appellate jurisdiction" over claims "inextricably intertwined" with the qualified immunity question. **Veneklase v. City of Fargo**, 78 F.3d 1264, 1269 (8th Cir. 1996). As discussed in Section III, Mogard has not demonstrated the deprivation of a property or liberty interest. This conclusion also resolves Mogard's related claims against the City. *See* **Eagle**, 88 F.3d at 628 (exercising pendent appellate jurisdiction over City's appeal of denial of summary judgment where court's ruling on collateral qualified immunity appeal "necessarily resolved the City's pendent claim" and the two appeals were "inextricably intertwined"). This court's ruling has not, however, "necessarily resolved" the City's liability in the retaliation claim. *Id.* This case is remanded for further proceedings about the retaliation claim against the City.

\* \* \* \* \* \* \*

The judgment is reversed in part, affirmed in part, and the case remanded for further proceedings consistent with this opinion.

_____