# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3211
_____

Shawna Hess

*Plaintiff - Appellant*

v.

Carol Ables, individually and in her official capacity as an employee of the City of Stuttgart; Tommy Lawson, individually and in his official capacity as an employee of the City of Stuttgart; Marion Maynard, individually and in her official capacity as Mayor of the City of Stuttgart; City of Stuttgart

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: March 14, 2013
Filed: April 26, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The City of Stuttgart ("the City") terminated Shawna Hess's employment after she refused a state trooper's request to take a drug test. Hess claims she was terminated in retaliation for her decision to exercise her Fourth Amendment rights,

and she sued the City, her supervisor Tommy Lawson, the City's personnel director Carol Ables, and the City's mayor Marianne Maynard. The district court[1] granted the defendants' motion for summary judgment based on qualified immunity, and we affirm.

**I.**

We review the district court's grant of summary judgment *de novo*, taking the facts in the light most favorable to Hess, the nonmoving party. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). During the middle of the workday on February 23, 2010, State Trooper David Chastain ("Trooper Chastain") was performing surveillance on the vehicle of a suspected drug dealer. Hess, the former girlfriend of the car's owner, arrived at the vehicle, which was located in a public parking lot. After Hess opened the car door, Trooper Chastain approached and observed a substance that appeared to be crystal meth on the console. Trooper Chastain briefly questioned Hess and then told her to return to work but to report to his office later that day. He immediately called Hess's supervisor, Tommy Lawson, to request permission for Hess to leave the office for an interview. Lawson agreed, and upon Hess's return, Lawson told her to go to Trooper Chastain's office. At the meeting, Trooper Chastain inquired about the car's owner and Hess's reasons for opening the car door. Hess denied that she had been attempting to procure drugs.

Trooper Chastain then asked Hess to submit to a drug test. Hess refused, saying she would "flunk it." Hess now explains that while she was not on drugs at the time she made this statement, and therefore would have passed a urine drug test, she made this comment in an attempt to be allowed to leave sooner. Trooper Chastain called Lawson a second time, to inform him of what had transpired during the meeting.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

Lawson then called Carol Ables, the City's personnel director, to ask if he had a sufficient basis for terminating Hess's employment. After reviewing a written statement from Trooper Chastain describing the day's events, Ables advised Lawson that she believed Hess had violated the city's drug policies. Later in the afternoon on the same day, Lawson fired Hess. The official termination documents identify the reason for separation as a violation of city policies and a failure to take a drug test as requested by state police. For purposes of reviewing the district court's grant of summary judgment, we will assume, as Hess claims, that the defendants fired her solely for refusing to submit to the urine drug test.

Hess brought claims under 42 U.S.C. § 1983 against Lawson, Ables, and Maynard (collectively, "the City employees"), in both their individual and official capacities. Hess argues that these defendants' retaliatory discharge violated her rights under the Fourth, Fifth, and Fourteenth Amendments. Additionally, Hess asserted a municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Hess also alleged violations of the Arkansas Civil Rights Act ("ACRA") and Section 504 of the Rehabilitation Act of 1973.[2] The district court granted summary judgment to the defendants, finding they had violated no clearly established right. Hess now appeals.

## II.

### A. Individual capacity claims

In analyzing the City employees' claims to qualified immunity, we consider two questions: (1) whether the facts Hess has shown, when viewed in the light most

---

[2]Although Hess's complaint brought a claim under the Rehabilitation Act of 1973, Hess has abandoned the claim by failing to brief this court on why dismissal was inappropriate. *See Marksmeier v. Davie*, 622 F.3d 896, 902 n.4 (8th Cir. 2010).

favorable to her, demonstrate that the conduct of the City employees violated a constitutional right, and (2) whether the constitutional right was "clearly established" on February 23, 2010, such that a reasonable official in the position of each of the City employees would have known his or her actions were unconstitutional. *See Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012). "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). The plaintiff bears the burden of proving that the law was clearly established. *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). If it was not clearly established, regardless of whether Hess has articulated a constitutional violation, the City employees are entitled to qualified immunity. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012).

We will begin with Hess's Fourth Amendment claim. Although a urine drug test is a search under the Fourth Amendment, *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989), none of the City employees attempted to conduct such a search because, as Hess admits, it was Trooper Chastain (a state police officer) who "requested the drug test for his own purposes [and] not at the request of the City." Hess nonetheless contends her Fourth Amendment rights were violated when Ables and Lawson fired her for exercising her right to refuse an unreasonable search and when Maynard failed to intervene and halt this alleged constitutional violation. Under this theory, discharging someone in retaliation for asserting his or her Fourth Amendment rights is itself a Fourth Amendment violation. The district court concluded that even if the City employees had committed a retaliatory discharge in violation of Hess's Fourth Amendment rights, the law at the time of the events in question did not clearly establish that their actions were unconstitutional.

As an initial matter, we recently held that, outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations. *Livers*, 700 F.3d at 360. Therefore, Hess's claim against Maynard necessarily fails. As for the individual capacity claims against Ables and

-4-

Lawson, Hess has not identified any cases clearly establishing that a retaliatory discharge in these circumstances is a Fourth Amendment violation. Hess relies primarily upon *Lesher v. Reed*, 12 F.3d 148 (8th Cir. 1994), as the source of the clearly established law. In *Lesher*, city police officers informed the plaintiff, a fellow officer, that he would be fired if he did not turn over his dog, which had bitten a child. The plaintiff then relinquished the dog. We held this to be a seizure within the meaning of the Fourth Amendment, and therefore if it was unreasonable, the plaintiff had suffered a violation of his Fourth Amendment rights. We cited the Supreme Court's decision in *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280 (1968), a Fifth Amendment self-incrimination case, for the proposition that "the State may not coerce [public employees] into relinquishing a constitutional guarantee under threat of losing their employment." *Lesher*, 12 F.3d at 151. Hess argues that just as in *Lesher*, the defendants attempted to coerce her into relinquishing her constitutional rights, namely the right against an unreasonable search.

There are two primary obstacles to *Lesher*'s capacity to serve as clearly established law for the purposes of this qualified immunity analysis. First, *Lesher*'s holding establishes that a municipal employer cannot attempt to compel one of its employees to relinquish his Fourth Amendment rights. But as Hess concedes, it was a state trooper, not her employer the City, who requested the ostensibly unreasonable search. Second, there was no coercion under threat of termination; neither Lawson nor Ables ever threatened Hess in an attempt to convince her to voluntarily undergo an unconstitutional search. Although Lawson directed Hess to leave work and go to Trooper Chastain's office, Hess does not allege that Lawson told her to go to the police station and submit to a drug test or that Lawson warned her she would be fired if she refused such a test. Instead, it was only *after* Hess had refused the test that Lawson conferred with Ables and terminated Hess's employment. Hess argues that these differences are too minute to matter, but "the right allegedly violated must be defined at the appropriate level of specificity." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 991 (8th Cir. 2009) (quoting *Moore v. Indehar*, 514 F.3d 756, 763 (8th

Cir. 2008)). While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," prior cases must give officers "fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). *Lesher* simply does not provide fair warning. In light of existing law on February 23, 2010, it would not have been clear to a reasonable official in the position of Lawson or Ables that it was unconstitutional to fire someone after she refused a state trooper's request to take a drug test for law enforcement purposes. Accordingly, we agree with the district court's conclusion. Even assuming the termination violated Hess's Fourth Amendment rights, it was not clearly established at the time of the incident that such an action was unconstitutional, and therefore the defendants were entitled to qualified immunity.

The district court ruled that Hess's remaining federal claims failed to allege a constitutional violation, and we agree. As to Hess's Fifth Amendment claim, a urine drug test would not violate her Fifth Amendment right against self-incrimination because urine samples, which are not testimonial evidence, do not trigger Fifth Amendment protections. *See Hendricks v. Swenson*, 456 F.2d 503, 506-07 (8th Cir. 1972). To the extent Hess is invoking the Fifth Amendment Due Process Clause, such a claim is unsustainable against any of these non-federal government defendants. *See Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980).

None of Hess's district court filings identified the particular basis for her Fourteenth Amendment claim. The district court ruled that Hess failed to allege a Fourteenth Amendment violation, regardless of whether her claim is premised on substantive due process, procedural due process, or a liberty interest. We agree. To assert a claim against a municipal employer "for deprivation of a protected liberty interest in a public employee's reputation," a plaintiff must demonstrate that the statement was made in public. *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009). None of the defendants are alleged to have made public statements about Hess. Success on a substantive due process claim requires allegations that the defendant's

course of action was "conscience shocking." *See Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000). Hess has failed to allege conscience-shocking behavior. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012) (defining conscience-shocking actions as those "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that [they] amounted to brutal and inhumane abuse of official power literally shocking to the conscience" (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010))). Finally, it is well established that at-will employees do not have a property interest in their continued employment, and thus their termination cannot support a procedural due process claim. *Skeets v. Johnson*, 816 F.2d 1213, 1214 (8th Cir. 1987). When hired, Hess signed an "Employment at Will Acknowledgment," which explicitly recognized the signer's at-will employment status. Before the district court and in her briefs to this court, Hess argued that at the time of her termination, her status had been altered. However, at oral argument, Hess conceded that she was an at-will employee.[3] As a result, she cannot maintain a procedural due process claim.

**B. Municipal liability claims**

Hess's § 1983 suit against Ables, Lawson, and Maynard in their official capacities is treated as a lawsuit "against the municipality." *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999). Even if Hess alleged facts amounting to a constitutional violation, a municipality can be liable under § 1983 only "if an action or policy itself violated federal law, or if the action or policy was lawful

---

[3]Even had she not made this concession, we would affirm the district court's conclusion that she remained an at-will employee at the time of her termination. The case Hess cited, *Qualls v. Hickory Springs Mfg. Co.*, 994 F.2d 505 (8th Cir. 1993), is inapposite because Hess does not claim that Lawson made an express promise, *prior* to terminating her employment, that she could retain her job if she brought in a clean drug test.

on its face but 'led an employee to violate a plaintiff's rights [and] was taken with "deliberate indifference" as to its known or obvious consequences.'" *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978, 982 (8th Cir. 2006) (alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). Hess argues she need not show deliberate indifference because she has established an unconstitutional official custom or policy. Hess correctly notes that under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), a custom or policy sufficient to support municipal liability can arise from a single action, such as the act of terminating Hess's employment. *See Brown*, 520 U.S. at 418. "It is well-settled that . . . '[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Ware v. Jackson Cnty.*, 150 F.3d 873, 885 (8th Cir. 1998) (alteration in original) (quoting *Pembaur*, 475 U.S. at 481). Hess has failed to allege facts indicating that the City delegated final policymaking authority to Ables, Lawson, or Maynard for the termination of city employees. As such, the district court properly dismissed the official capacity claims and the claims against the City.

### C. State law claims

Hess also filed claims under the Arkansas Civil Rights Act ("ACRA"), which provides a cause of action for deprivation of rights secured by the Arkansas Constitution. Ark. Code Ann. § 16-123-105(a). As the district court noted, both parties failed to present arguments about whether the protection afforded by the ACRA is broader or narrower than that afforded by § 1983, and the court accordingly explained that its rulings on Hess's § 1983 claims applied equally to her ACRA claims. Because Hess did not explain why her ACRA claims warranted separate analysis, the district court did not err in dismissing the ACRA claims alongside the § 1983 claims. *See Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007).

## III.

For the foregoing reasons, we affirm the dismissal of Hess's claims.

_____