# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1290
_____

Richard H. Tholen, M.D.; Mary Jane Tholen

*Plaintiffs - Appellants*

v.

Assist America, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 10, 2020
Filed: July 31, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Dr. Richard Tholen and his wife Mary Jane appeal the district court's grant of a motion to dismiss filed by Assist America, Inc. ("Assist America"). The Tholens sued Assist America for defamation after Assist America published a case study in a travel and insurance magazine concerning an injury Dr. Tholen suffered. In granting the motion to dismiss, the district court found the case study in question did not refer to the Tholens either explicitly or by implication, and therefore the

defamation claim was improperly pled under Minnesota law. On appeal, the Tholens argue that under Minnesota law they pled sufficient facts to show Dr. Tholen's identity was ascertainable from the publication. Because the description in Assist America's case study is so specific and unique that it could be viewed by a jury as fitting a universe of one — Dr. Tholen — we reverse, finding dismissal at the motion-to-dismiss stage was improper.

## I. Background

Assist America is a membership-based organization that provides global emergency medical services. Dr. Tholen is a board-certified plastic surgeon based in the Twin Cities. Dr. Tholen's reputation as an experienced surgeon is well-known. He was named a "Top Doctor" in Plastic Surgery by Minneapolis/St. Paul Magazine each year from 2014 to 2017. He also received other accolades for his work. Dr. Tholen and his wife, Mary Jane, were members of Assist America in 2015.

In April 2015, Dr. Tholen suffered a severe knee injury in Mexico when he collided with a pulley while zip lining. Dr. Tholen received immediate medical attention whereby the injured leg was placed in a hard cast without any evaluation for a vascular injury. The Tholens allege the care was so poor it would have constituted malpractice in the United States.

On that same day, the Tholens contacted an orthopedic surgeon in the United States who advised them to have the cast removed and to return home as quickly as possible for further evaluation and treatment. After this call, Dr. Tholen went to a second Mexican hospital where the cast was removed. At the second hospital, Dr. Tholen emailed and called Assist America and requested medical evacuation. The Tholens allege Assist America refused to evacuate him, did not consult a medical director in making that decision, and only told them they were at "a very good hospital."

The next day, the Tholens contacted Assist America again. Again, Assist America declined to evacuate them. However, the following day — now two days post-accident — two Assist America medical directors reviewed the situation and approved evacuation to the United States. But, by this time, the Tholens had already purchased the first available tickets for a flight out of Mexico. The Tholens departed Mexico that night and landed in Minnesota early the next day.

On the day of return, Dr. Tholen saw an orthopedic surgeon and a vascular surgeon. Dr. Tholen underwent several tests and surgical procedures attempting to save his leg to no avail. Less than a month after returning home, doctors amputated Dr. Tholen's right leg above the knee.

About a year later, in July 2016, Assist America published a case study on Dr. Tholen's medical misadventure in the Assistance and Repatriation Review 2016, a special edition of the International Travel & Health Insurance Journal. The printed case study stated as follows:

**Situation**

Assist America's services attached to an association membership 59-year-old male, injured in a zip lining accident in Cancun, Mexico.

**Assistance Provided**

Assist America's Operations Center in Princeton, New Jersey, US received a call from a member who stated that he had been injured while zip lining. He explained that he had struck his leg on a pulley and sustained a high-energy fracture and dislocation. The member, a doctor himself, was transported to a local clinic for casting. Unfortunately, the clinician at the local clinic put on a full circumferential cast that was too restrictive, so the patient was moved to a local reputable hospital for re-evaluation. There, the treating doctor opened the cast to reduce the pressure, and based on his findings, recommended surgery.

At this time, the member contacted Assist America and insisted on traveling to his home in the Midwest to undergo surgery, expressing fear about receiving further medical care abroad. Assist America's medical director explained to the member that it was highly inadvisable to travel given his condition. The safest option, he explained, would be to have the surgery performed locally at the reputable, well-equipped facility he was currently in. The member, however, declined and against the medical recommendations he was receiving from both Assist America and the local treating team, opted to make his own arrangements to travel home. Days later, Assist America was contacted by the member's wife who informed us that the patient's leg was ultimately amputated due to loss of circulation during travel.

The article surrounding the case study also informs readers that "Ignoring medical advice in favour of personal instincts is generally not advisable nor acceptable, of course, as the case study on this page illustrates."

In July 2018, the Tholens sued Assist America for defamation, alleging several of the statements contained within the case study were false and defamatory. These statements include (1) that the treating doctor in Mexico opened the cast and recommended surgery, when he instead recommended not removing the cast and simply continuing observation for 24–48 hours; (2) that an Assist America medical director explained it was highly inadvisable to travel, when instead the Tholens were never advised by a medical director until after they had already purchased plane tickets; (3) that the member decided to make his own travel arrangements against the recommendations of Assist America and the local medical team, when Dr. Tholen claims he received no medical recommendation from Assist America; and (4) that the member's wife told Assist America that the patient's leg was amputated from loss of circulation during travel, when Mrs. Tholen's call reporting the amputation did not discuss loss of circulation. Overall, the Tholens allege these statements painted them in a negative manner by falsely implying Dr. Tholen lost his leg because of his own decisions and actions.

-4-

Assist America filed a motion to dismiss the Tholens's claim arguing in part that the case study did not identify or refer to the Tholens, and therefore their identity was not readily ascertainable. The district court agreed, granting the motion to dismiss the defamation claim on this ground.

## II. Analysis

We review the grant of a motion to dismiss de novo. *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015). In undertaking this review, we "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Id.* But we need not accept "threadbare recitals of the elements" as true. *Id.* (alteration omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We must also remember that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Although the underlying claim is one of Minnesota defamation law, the resolution of the case hinges in large part on its procedural posture: an appeal of a grant of a motion to dismiss. The Tholens need only provide sufficient facts to have "state[d] a claim to relief that is *plausible* on its face." *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under Minnesota law, to state a claim of defamation, a party must sufficiently plead four elements. First, the statement or communication in question must be defamatory. Second, the statement must be false. Third, the statement must refer to the plaintiff. And fourth, the statement must be published. *See Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003); *see also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 542 (8th Cir. 2008) (applying Minnesota law). In this case, the district court resolved the motion to dismiss on the

third element, finding the case study did not refer to the Tholens either explicitly or by implication.

However, "whether an allegedly defamatory statement concerns the plaintiff is generally a question of fact for the jury." *Maethner v. Someplace Safe, Inc.*, 907 N.W.2d 665, 670 (Minn. Ct. App. 2018), *rev'd in part on other grounds*, 929 N.W.2d 868 (Minn. 2019); *accord Ruzicka v. Conde Nast Publ'ns, Inc.*, 999 F.2d 1319, 1322 (8th Cir. 1993).

The question before us is whether the allegations pled in the Tholens's complaint were sufficient to establish a plausible claim that those reading the case study would know it was referring to the Tholens. Without considering the ultimate merits of the Tholens's claim, we find the Tholens sufficiently pled just enough to proceed beyond the motion to dismiss stage. "A plaintiff does not have to be specifically named in the defamatory statement so long as a reader by fair implication would understand the statement to be directed at the plaintiff." *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 948 (D. Minn. 2001); *accord Dressel v. Shippman*, 58 N.W. 684 (Minn. 1894) (explaining direct reference to the plaintiff is not "necessary where the libelous article contains reference to matters of description or to facts and circumstances from which others reading the article may know the plaintiff was intended"). Here, there is a plausible inference, sufficient to survive a motion to dismiss, that persons[1] who read the case study about a middle-aged doctor from the Midwest who injured his leg while zip lining in Mexico resulting in amputation would understand the article to be referencing Dr. Tholen. Given the rare

---

[1]Such persons include the 20,000 person subscription base of the magazine as well as any person with access to the internet link to the online version of the publication, as included in the Tholen's complaint. The dissent overlooks the possibility that among those subscribers are employees at Assist America who were familiar with the Tholens' story, or individuals in Minnesota or the medical community generally who were aware of Dr. Tholen's amputation.

factual scenario experienced and the replication of those details in the case study, "the relationship of the [case study] to the [Tholens] as a matter of identity is a question for the jury to be determined [from the case study] as a whole." *Ruzicka*, 999 F.2d at 1322.

Indeed, the Tholens's complaint provides the content of the allegedly defamatory statement, information on where the case study could be found, and specifically alleges that "given the circumstances the Case Study describes, including a male member [of Assist America], 'a doctor himself' who was 'injured in a zip lining accident' in Mexico whose leg was ultimately amputated," the universe of identifiable subjects who fit all of these unique facts is practically limited to one. This was sufficient to satisfy the pleading requirements. *See Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867–69 (D. Minn. 2015) (denying a motion for judgment on the pleadings of a Minnesota defamation claim where the plaintiff alleged enough facts to establish the defendant's statements would be understood to be about him). We therefore reverse the district court's dismissal based on the third element of the Tholens's defamation claim.

Assist America also invites us to affirm the district court's judgment on other grounds. First, Assist America argues the Tholens failed to allege that Dr. Tholen's reputation was harmed, which it claims is required under Minnesota law. And second, Assist America argues that the material statements in the case study were not false, so the defamation claim fails as a matter of law. We disagree with Assist America's assertions on both grounds, finding the Tholens have pled sufficient facts to proceed beyond the motion to dismiss stage.

We first address Assist America's argument that the Tholens failed to plead actual harm to reputation. Assist America relies on the Minnesota Supreme Court's decision in *Richie v. Paramount Pictures Corp.* for the proposition that where statements were made by the media, involved a matter of public concern, and there

was no allegation of actual malice, recovery cannot be based on presumed damages; actual damages must be demonstrated instead. 544 N.W.2d 21, 26 (Minn. 1996). We reject this argument because the Tholens's allegations set forth a plausible claim of "actual malice," and therefore the complaint need not allege actual damages.[2]

The Minnesota Supreme Court has described actual malice as "a term of art . . . mean[ing] that the defendant acted with knowledge that the publication was false or with reckless disregard of whether it was false or not." *Chafoulias v. Peterson*, 668 N.W.2d 642, 654 (Minn. 2003) (internal quotation and alteration omitted). The defendant need not have "acted with ill will or spite," and "reckless disregard" simply "requires that a defendant make a statement while subjectively believing that the statement is probably false." *Id.* at 654–55. The complaint here includes sufficient facts to indicate Assist America knew that at least some of the claims made in the case study were not true. For example, the case study states the second treating physician in Mexico recommended surgery. But the Tholens's complaint alleges this is not true, asserting that this physician recommended "observation." Also, the case study indicates that an Assist America medical director explained to the patient it was highly inadvisable to travel given his condition. But the complaint asserts this was expressly untrue because Dr. Tholen never talked to a medical director and therefore was never advised by a medical director not to travel. Further, the case study states the patient's wife called and told an Assist America representative that her husband's amputation was caused by a "loss of circulation during travel." But the complaint alleges this statement was false as Mrs. Tholen never made such a statement, or anything similar. Because we are at the motion to dismiss stage, we must "accept as true all factual allegations in the complaint." *McDonough*, 799 F.3d at 945. The allegations of these inaccuracies present a reasonable inference that Assist America

---

[2]Because of this conclusion, we need not decide whether Assist America qualifies as a member of the media or whether the case study was a matter of public concern.

acted with knowledge or reckless disregard for the truth when publishing this case study. Therefore, the Tholens have pled sufficient facts of "actual malice" to proceed.[3]

As to the argument regarding material falsity, Assist America's logic dismantles its own argument. Assist America readily admits that parts of the case study were not accurate — characterizing such falsities as "minor inaccuracies or alterations" and "inconsequential." One such example is how the case study indicates Mrs. Tholen's call informed Assist America that the travel home to the United States was the cause of the amputation, whereas the complaint draws the connection between the need to amputate with the delay in reaching adequate medical care. Assist America claims this was a minor inaccuracy that leaves the gist of the article intact, i.e., that moving a patient is inadvisable. However, such an alteration is not necessarily minor from Dr. Tholen's perspective because he claims he was harmed by the assertion that he (a medical doctor) did not follow a doctor's orders. As such, there is a factual dispute over whether the challenged statements in the case study are materially false. This dispute prevents dismissal of a defamation claim under 12(b)(6).

_____

[3]On appeal, Assist America raises the argument that its publication of the allegedly defamatory material is privileged because it produced the case study for educational purposes. Because we have found the Tholens have pled sufficient facts of "actual malice," the qualified privilege claimed is unavailable. *See Harlow v. State Dep't of Human Servs.*, 883 N.W.2d 561, 569–70 (Minn. 2016) (finding in the defamation context that "'qualified or conditional privilege' applies only if the statements 'are publicized in good fath and *without malice.*'") (emphasis added) (quoting *Zutz v. Nelson*, 788 N.W.2d 58, 61–62 (Minn. 2010)).

## III. Conclusion

Because the Tholens's complaint establishes a plausible inference that Dr. Tholen was identifiable by implication in the published case study and Assist America has not convinced us alternative grounds exist to affirm, we reverse the district court's grant of the motion to dismiss and remand for further proceedings.

ERICKSON, Circuit Judge, dissenting.

The majority holds that the complaint contains "just enough" to survive a motion to dismiss. I respectfully disagree. As the majority notes, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." Id. (quotations omitted). This case hinges on whether the complaint contains a *plausible* claim that readers of the case study would understand it was referring to the Tholens. I say no.

Under Minnesota law, a defamatory statement must be "of and concerning" the plaintiff, either explicitly or by "fair implication." Glenn v. Daddy Rocks, Inc., 171 F.Supp.2d 943, 948 (D. Minn. 2001). Here, the case study does not name the Tholens, and certain facts were changed to further disguise their identity. Nevertheless, the Tholens allege that the unusual combination of facts, alone, renders them sufficiently identifiable. Complaint at ¶ 55. The Tholens argue that readers who are "already aware" of their situation would understand the article as referring to them. Id. Assuming that to be the case, a review of the complaint demonstrates that the Tholens do not allege any basis upon which a finder of fact could conclude that any one reader of the relevant journal knew of their situation – instead they allege

only that the article was published in a journal for insurance professionals with readership of approximately 20,000. Id. at ¶ 57.

To support a finding of fair implication, the majority cites to Sagehorn v. Indep. Sch. Dist. No. 728, 122 F.Supp.3d 842, (D. Minn. 2015). In Sagehorn, the defamation claim was allowed to proceed where the alleged defamatory statement did not specifically name the plaintiff but was of such a nature that it would have been understood by the readers to be about the plaintiff because of news stories that were already in the public domain. Id. at 867–69. See also East Coast Test Prep LLC v. Allnurses.com, Inc., 307 F.Supp.3d 952 (D. Minn. 2018) (finding fair implication where an internet post did not specifically name the plaintiff, but the internet thread title and post immediately after named the plaintiff so the identity could be ascertained). The Tholens' situation is different. There is no allegation of public news stories, internet discussions, or social media posts which could indicate that the alleged readers were "already aware" of the Tholens' story.

Because the complaint fails to allege a plausible basis that the Tholens' identity was ascertainable by readers of the case study, I would affirm the district court's dismissal of the complaint for failure to state a claim.

_____

-11-