# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3910
_____

Brian Bresnahan

*Plaintiff - Appellant*

v.

City of St. Peters; Rick Struttmann, in his personal and official capacity as Chief of Police of the St. Peter's Police Department; Russ Batzel, in his personal and official capacity as City Administrator of the City of St. Peters

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 20, 2022
Filed: January 19, 2023
_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Brian Bresnahan sued the City of St. Peters, Chief of Police Rick Struttmann, and City Administrator Russ Batzel under 42 U.S.C. § 1983 for violating his First Amendment rights. The district court dismissed Bresnahan's complaint. We reverse and remand.

## I.

Bresnahan alleged the following, which we assume is true. *See Tholen v. Assist Am., Inc.*, 970 F.3d 979, 982 (8th Cir. 2020). Police officers in the St. Peters Police Department created a text messaging group to update each other about local Black Lives Matter (BLM) protests. Although the text group was intended for official purposes, specifically for officers to share up-to-date information about local BLM protests, they also shared "unrelated" content.

Bresnahan sent the group a video from an animated sitcom called "Paradise PD." It showed a black police officer who accidentally shot himself with a media headline stating, "another innocent black man shot by a cop." According to Bresnahan, the video was satire and a parody of the BLM protests. Bresnahan claimed that he shared the video because he was critical of the protests. Another officer in the group complained. The next morning, Chief Struttmann berated Bresnahan, ordered him to resign, and told him that if he refused, Struttmann would open an investigation and recommend to City Administrator Batzel that Bresnahan be fired. Bresnahan resigned.

Bresnahan alleged under § 1983 that he was retaliated against for exercising his First Amendment right to free speech. The Defendants moved to dismiss, and the district court granted their motion.

## II.

We review the grant of a motion to dismiss *de novo*. *Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 979 (8th Cir. 2021). A claim survives a motion to dismiss if the complaint's nonconclusory allegations, accepted as true, make it plausible that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–83 (2009). Because Bresnahan did not attach the video at issue to his complaint, we use the complaint's description of the video to evaluate whether Bresnahan plausibly alleged that his speech was protected by the First Amendment. The threshold

question is whether Bresnahan spoke in his capacity as a private citizen on a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If Bresnahan shows that, "the possibility of a First Amendment claim arises." *Id*.

## A.

We first address whether Bresnahan acted as a private citizen or a public employee when he sent the video. If Bresnahan was acting as a private citizen, his speech may be protected by the First Amendment. If instead he was acting as a public employee, his speech is not protected, and the inquiry ends. For Bresnahan to prevail, we must conclude that speech was not made "pursuant to [his] official duties." *Garcetti*, 547 at 421.

"Speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (citation omitted). For example, in *Mogard v. City of Milbank*, we held that a police officer who complained to his supervisors about his patrol car was acting "pursuant to" his job duties, regardless of whether his job required him to report on the condition of the patrol cars. 932 F.3d 1184, 1189 (8th Cir. 2019). Still, "the critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228 (2014) (cleaned up).

Bresnahan's job required him to report information about local BLM protests. *See generally Tholen*, 970 F.3d at 982 (citation omitted) (when reviewing a motion to dismiss, the court must "draw all reasonable inferences in favor of the nonmoving party"). Although Bresnahan intended to share the video to criticize BLM protests, his speech was not made pursuant to his official duties. Based on the allegations in the complaint, the group text was used to send both work-related and unrelated messages, and Bresnahan's video was such an unrelated message. Because Bresnahan's role in the group text was to share and respond to information about

local BLM protests, and not to share his personal views on BLM, Bresnahan has alleged that he was acting as a private citizen when he sent the video.

B.

We next turn to whether Bresnahan's speech involved a matter of public concern. Speech involves a matter of public concern when it "relat[es] to any matter of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983), or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public," *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004). We must evaluate the "content, form, and context" of Bresnahan's speech. *Connick*, 461 U.S. at 147.

First, the content of the video suggests that Bresnahan's speech involved a matter of public concern. The video shows a black cartoon police officer shooting himself and a news headline captioning the event as "another innocent black man shot by a cop." Bresnahan argues that the video is critical of the BLM movement. Although the video does not expressly mention BLM, it does reference a police officer shooting a black man. It is widely known that a central goal of BLM is to stop police brutality. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (evaluating a complaint on a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (quoting *Iqbal*, 556 U.S. at 679)). The emphasis of a police officer shooting yet "another" black man appears to be an acknowledgement of BLM's self-proclaimed mission.

At a broader level, the video also appears to criticize how the media characterizes police shootings of black men. In the video, the media treats a police officer shooting *himself* as an example of an "innocent black man shot by a cop." Because "speech criticizing the media's coverage of a particular subject qualifies as a matter of public concern," we find that, when taken as a whole, the video's content

-4-

supports a finding that Bresnahan's speech involved a matter of public concern. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 978 (9th Cir. 2022).

Next, we consider that Bresnahan shared the video to his coworkers in a private group text. Generally, speech shared with coworkers, as opposed to the press or public, weighs against a finding that the speech involved a matter of public concern. *See Desrochers v. City of San Bernardino*, 572 F.3d 703, 714–15 (9th Cir. 2009). But this is not a bright-line rule. The inquiry is highly fact specific. *See, e.g.*, *Rankin v. McPherson*, 483 U.S. 378, 381–87 (1987) (a statement made during a private conversation with one coworker involved a matter of public concern); *cf. Nagel v. City of Jamestown*, 952 F.3d 923, 930–31 (8th Cir. 2020) (statements made in a public television interview did not involve a matter of public concern). Here, the fact that Bresnahan's coworkers were police officers cannot be overlooked. These officers regularly communicated about local protests, and were, by occupation, a focal point of the BLM movement.

Finally, we evaluate context. At the time Bresnahan sent the video, BLM protests were the "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Roe*, 543 U.S. at 83. Bresnahan alleges that he shared the video to criticize BLM protesters. Although not dispositive, the speaker's intent may be relevant to the public concern inquiry. *See, e.g.*, *Tindle v. Caudell*, 56 F.3d 966, 970 (8th Cir. 1995) (An officer who wore blackface to a Halloween party did not speak on a matter of public concern where the officer testified that he did not "intend[] to comment on any issue of interest to the public. He instead intended simply to entertain the other officers and their guests at the party by wearing an amusing costume."); *see also Pruitt v. Howard Cnty. Sheriff's Dep't*, 96 Md. App. 60, 70 (1993) (officers who parodied "Hogan's Heroes" by uttering German words and raising their arms in Nazi-like salutes did not speak on a matter of public concern because the officers only "intended for amusement, bereft of any political content").

Considering the content, form, and context of the speech, Bresnahan alleged that his speech involved a matter of public concern. The video plausibly commented on BLM and related media coverage, so it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146.

Though the district court found that the video was "nothing more than a crass attempt at humor," the First Amendment protects speech that most deem offensive. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011). Our ruling today does not mean that Bresnahan will ultimately prevail, as the district court may later conclude that the Defendants had adequate justification for acting as they did.[1] We leave that determination to the district court in the first instance. We hold merely that Bresnahan's complaint states a claim for First Amendment retaliation.

## III.

While Bresnahan has met the threshold showing required to advance his First Amendment claim, we express no opinion on the merits of that claim. We reverse and remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring.

Because the court "hold[s] merely that Bresnahan's complaint states a claim for First Amendment retaliation," I concur in the judgment.

———————————————

———————————————

[1]When speech is of public concern, courts perform the *Pickering* balancing test that weighs "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. Of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). At that point, the burden shifts to the government employer to establish permissible grounds for the employee's discharge. *Sexton v. Martin*, 210 F.3d 905, 911–12 (8th Cir. 2000).