# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2019
_____

Betty Grooms

*Plaintiff - Appellant*

v.

Judge Steven A. Privette, in his individual capacity only; Alice Bell, in her individual capacity only, also known as Alice Privette

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: January 15, 2025
Filed: February 4, 2025
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

A Missouri clerk of court, Betty Grooms, brought suit under 42 U.S.C. § 1983 against her political rival, Alice Bell, and Bell's husband, Judge Steven Privette. Grooms claims that the defendants violated her First Amendment rights by discriminating and retaliating against her and that they violated her substantive

due process rights as well. The district court[1] dismissed her claims, holding that the defendants did not violate the plaintiff's clearly established First Amendment rights and did not violate her substantive due process rights, clearly established or otherwise. Because we agree, we affirm.

Since the district court dismissed Grooms's claims on the pleadings, we first recite the salient factual allegations in her complaint. Grooms, a Republican, defeated Bell, a Democrat, in an election for the office of Oregon County Circuit Clerk. Bell, who had been serving the county as a Deputy Clerk, retained her job under Grooms. Three years later, Bell married Privette, a Republican and the Presiding Judge for a judicial circuit that encompasses Oregon County.

Thereafter, Bell and Privette were occasionally uncooperative with Grooms. Bell disobeyed an instruction from Grooms to train another Deputy Clerk. And Privette rejected Grooms's request to replace Bell as his courtroom clerk for a civil case. To no avail, Grooms told him that the Office of State Courts Administrator—"OSCA"—had recommended the replacement. With a court reporter present, Privette loudly complained about her intervention and warned her that he would have the sheriff remove her from his courtroom if she persisted.

Tensions escalated dramatically in the months that followed. Bell resigned and announced she would run for Circuit Clerk, this time as a Republican. Around the same time, Privette ordered Grooms to prepare a spreadsheet listing over three years' worth of Oregon County criminal cases and identifying the completion date for any bill of costs in each case, the date each bill of costs was properly certified and filed, and the expected amount of the costs the state would reimburse. Working with OSCA, Grooms prepared the requested spreadsheet, but Privette rejected it. Twice more, Privette ordered her to prepare a spreadsheet providing the requested information, and twice more he rejected Grooms's attempts to comply.

---

[1] The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri.

-2-

Privette then appointed a prosecutor to prosecute Grooms for criminal contempt, and the prosecutor duly filed a motion for contempt with Privette. Grooms moved to dismiss the proceedings, moved to assign another judge to preside over them, and petitioned the Missouri Court of Appeals for writs of prohibition and mandamus, but all these maneuvers proved unsuccessful.

Finally, Grooms petitioned the Missouri Supreme Court, which broke the trend by issuing a writ of prohibition requiring the dismissal of the contempt motion. *State ex rel. Grooms v. Privette*, 667 S.W.3d 92, 100 (Mo. banc 2023). The Court reasoned that Missouri courts can generally punish for contempt only to safeguard their functioning as judicial tribunals and that Grooms's conduct did not threaten that functioning. *Id.* at 98. Grooms did have duties to calculate costs in criminal cases, prepare bills of costs identifying expenses chargeable by counties to the state, and facilitate reimbursement to the counties. *Id.* at 97–98. But her alleged misconduct, which purportedly affected the reimbursement to a county, was "unrelated to the resolution of any issue pertaining to" any case in which her duties arose and did not affect the "Court's budget nor otherwise affect the Court's ability to operate in its judicial role." *Id.* at 98.

Meanwhile, Grooms had won reelection as Circuit Clerk after Bell dropped out of the race. Still unhappy about her treatment on the job and about the contempt proceedings, which cost her over $39,000 in litigation expenses, Grooms brought her First Amendment and substantive due process claims against Bell and Privette in the case now before us.

Because the district court granted a motion to dismiss that was filed after the pleadings closed, we treat the motion as one for judgment on the pleadings, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990), and review it under the standard applicable to motions to dismiss. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). We conduct a de novo inquiry, accepting the plaintiff's nonconclusory allegations as true, and ask whether it is plausible that the defendants are liable. *Bresnahan v. City of St. Peters*, 58 F.4th 381, 384 (8th

-3-

Cir. 2023). We will uphold a dismissal based on qualified immunity if the immunity is apparent on the face of the plaintiff's complaint. *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). Qualified immunity attaches if the defendants' conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Billingsley v. St. Louis Cnty.*, 70 F.3d 61, 62 (8th Cir. 1995).

We start our consideration of the case with Grooms's First Amendment claim, and, because we are satisfied that any law Bell or Privette violated was not clearly established, we hold that they enjoy qualified immunity with respect to that claim. Grooms asserts that Bell and Privette discriminated and retaliated against her because she was a Republican. It is true, as Grooms contends, that the First Amendment prohibits government discrimination or retaliation "against public employees based on political affiliation, where political affiliation is not an appropriate job requirement." *Charleston v. McCarthy*, 926 F.3d 982, 989 (8th Cir. 2019). But Grooms has identified no action Bell or Privette took against her that qualifies as discriminatory or retaliatory under clearly established law.

The general rule in our circuit is that a government employee asserting a First Amendment discrimination or retaliation claim must show she suffered an "adverse employment action." *See id.*; *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018). This rule derives from an analogy we have drawn between such claims and employment discrimination claims under Title VII. *See Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir. 2001). To prevail, our cases require an employee to establish that she suffered "a material change in the terms or conditions" of her employment, *see Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir. 2002); *Charleston*, 926 F.3d at 989, and establish that the change would "chill a person of ordinary firmness" from continuing to engage in activity protected by the First Amendment, *see Kemp*, 894 F.3d at 906. We acknowledge that the Supreme Court has not expressly held that a retaliatory or discriminatory action must affect terms or conditions of employment, *see Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72–79 (1990), that some circuits have long rejected such a requirement, *see Power*

*v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000), and that others have abandoned it as understandings of Title VII have changed, *see Lore v. City of Syracuse*, 670 F.3d 127, 163–64 (2d Cir. 2012). But we have no occasion to reconsider the requirement here because Grooms accepts it.

And in applying it we conclude that it is at least unclear whether Bell or Privette materially changed the terms or conditions of Grooms's employment. Grooms's main argument is that Bell and Privette did so by inducing a prosecutor to pursue a baseless criminal contempt prosecution against her. Yet the prosecution had no obvious effect on Grooms's employment. Despite the prosecution, she has apparently enjoyed office without interruption and without any change in basic terms or conditions of employment like "pay or benefits" or "job duties or responsibilities." *See Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015). She was never convicted or sentenced, *cf. Wood v. Georgia*, 370 U.S. 375, 382–83 (1962), nor did the prosecution otherwise diminish her "future career prospects," *cf. Kemp*, 894 F.3d at 906. Instead, the Missouri Supreme Court ordered the prosecution dismissed, and she won reelection as Circuit Clerk. Though she may still bristle at the public—and, in her view, false—allegations against her, we are wary of treating one public official's allegations against another public official as discrimination or retaliation without more. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000).

Grooms has not cited any authority that undermines our doubts about whether inducing the contempt prosecution was an adverse employment action. Since she has the burden to show that clearly established law forbade the inducement, *see Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019), we are left to conclude that Bell and Privette enjoy qualified immunity. We note, as well, that our own research has revealed no authority clearly establishing that inducing the contempt prosecution was an adverse employment action. The Supreme Court recognized in *Hartman v. Moore* that inducing a criminal prosecution against a private citizen in retaliation for her speech may violate the First Amendment even if it does not result in a conviction or sentence. 547 U.S.

-5-

250, 256, 262 (2006). And the Court understandably did not suggest that a private citizen needs to show any effect on the terms or conditions of her employment to make out a claim. The Court has not, however, held that elected officials enjoy similar protection against prosecutions initiated because of their political affiliation. At most, it has suggested in dictum that *Hartman* extends to elected officials. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022). Since we have historically distinguished between First Amendment claims brought by public officials, who must prove an adverse employment action, *Jones*, 285 F.3d at 713, and ones brought by private citizens, who need not, *Williams v. City of Carl Junction*, 480 F.3d 871, 877–78 (8th Cir. 2007); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002), we cannot say it was clear that this dictum created an exception to our usual approach. We are aware that the Sixth Circuit has held that filing a lawsuit against a public official may be an adverse action. *See Benison v. Ross*, 765 F.3d 649, 660 (6th Cir. 2014). Still, assuming its reasoning reached a prosecution of an elected official like Grooms, the sort of "robust consensus" of persuasive authority that might clearly settle the law remains lacking. *See Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017); *cf. Lane v. Nading*, 927 F.3d 1018, 1023 (8th Cir. 2019).

Not out of arguments, Grooms purports to identify several adverse employment actions she suffered other than the inducement of the contempt prosecution, but we have no difficulty in concluding that her characterization of them is incorrect. That Bell ignored Grooms's instruction to train a Deputy Clerk was an isolated act of insubordination. Managing that occurrence was Grooms's job as Bell's supervisor; it was hardly a material new term or condition of her employment.

Nor did Privette's refusal to let Grooms replace Bell as courtroom clerk for a single civil case materially change her employment terms or conditions. Grooms does not allege that she was entitled to make the assignment, only that OSCA recommended it. We are doubtful that not allowing Grooms to make one case assignment would be material even if she were entitled to do so, and we are

confident that merely rejecting one recommended case assignment was not material here.

We are equally confident that the additional work Grooms had to do to prepare spreadsheets requested by Privette reflected no material change in the terms or conditions of her employment. We have said in other contexts that an "increased workload that materially changes an employee's duties can constitute an adverse employment action," *see Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016), but Grooms alleges nothing like that. She concedes that she had a duty to comply with Privette's orders to process bills of costs. She objects only to Privette's attempt to control the "detailed manner" in which she documented her compliance. There is no indication in Grooms's complaint, however, that documenting her compliance was a duty she would have avoided but for Privette's request for spreadsheets. Nor does her complaint suggest that documenting her compliance in the requested spreadsheets interfered with her performance of her other duties.

Even taking all of Bell's and Privette's actions against Grooms together, they did not rise to the level of an adverse employment action under clearly established First Amendment law. It is uncertain whether Privette's inducement of a criminal contempt prosecution against Grooms was an adverse employment action, and Bell's and Privette's remaining conduct had little or no effect on the terms or conditions of Grooms's employment. We know of no authority clearly establishing that adding the latter conduct to the former resulted in a material change to her employment terms or conditions. We therefore hold that Bell and Privette enjoy qualified immunity with respect to Grooms's First Amendment claim.

This leaves only Grooms's substantive due process claim for us to consider, and we readily conclude that this claim is subject to dismissal, too. There is no need to distinguish between clearly and less clearly established law to reach this conclusion. The claim is missing a central element: a serious deprivation of an interest protected by the Fourteenth Amendment's Due Process Clause.

To prevail under our court's precedents, a party who claims that a defendant violated her substantive due process rights must show that she has a "protected life, liberty, or property interest." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc). And not just any impingement on such an interest will do; the defendant's conduct must shock the conscience. *Hess v. Ables*, 714 F.3d 1048, 1053 (8th Cir. 2013). Though Grooms insists that she suffered cognizable injuries to property and liberty interests in her occupation and reputation, her argument does not withstand scrutiny under these standards.

Take her primary contention first. She says Bell and Privette deprived her of a property or liberty interest in her first and second terms as Circuit Clerk. But a moment's reflection reveals this is untrue. Grooms enjoyed the entirety of the first term, won reelection, and has served the second term without interruption.

Insofar as Grooms suggests that she had a property or liberty interest in performing her duties, we need only observe that any interference with that performance was less than conscience-shocking. The sum of the interference attributable to Bell and Privette consists of Bell's one-off failure to train a Deputy Clerk as Grooms ordered, Privette's rejection of a recommendation to replace Bell with Grooms as a courtroom clerk in a single case, and Privette's three requests that Grooms prepare spreadsheets documenting how she processed bills of costs. Regarding the last, recall that Grooms objects to Privette's effort to control the "detailed manner" in which she documented her work and not to documentation itself. With that in mind, it seems to us that Bell's and Privette's interference with Grooms's discharge of her duties was far more like the "ordinary incidents" and frustrations of public employment, *see Tucker v. City of Hot Springs*, 204 F.3d 783, 784 (8th Cir. 2000) (per curiam); *Campbell v. Williams*, 11 F. App'x 685, 685–86 (8th Cir. 2001) (per curiam), than the "brutal and inhumane" conduct that violates the Fourteenth Amendment, *see Keefe v. City of Minneapolis*, 785 F.3d 1216, 1223 (8th Cir. 2015); *Robbins v. Becker*, 794 F.3d 988, 994 (8th Cir. 2015). We appreciate, of course, that Privette's conduct in engineering Grooms's contempt prosecution was not so ordinary, but we can't see how it affected any

interest Grooms had in performing her duties on the facts she alleges. The Missouri Supreme Court ordered the prosecution dismissed, and Grooms does not allege that the prosecution had collateral effects on her work.

We are, lastly, unconvinced that engineering the prosecution violated Grooms's substantive due process rights in a different way: by tainting Grooms's reputation. It is well settled that an "interest in reputation alone is neither liberty nor property guaranteed against state deprivation without due process of law." *Kemp*, 894 F.3d at 909; *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010); *Liscomb v. Boyce*, 954 F.3d 1151, 1155 (8th Cir. 2020).

We conclude that Bell and Privette did not deprive Grooms of a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause. Grooms's substantive due process claim is therefore, like her First Amendment claim, inadequate under our pleading standards. The district court was right to dismiss both claims.

Affirmed.

_____