# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3709

_____

Nikki Steiner Mazzocchio; Angela Steiner Kraus

*Plaintiffs - Appellees*

v.

Cotter Corporation; Commonwealth Edison Company

*Defendants - Appellants*

DJR Holdings, Inc., formerly known as Futura Coatings, Inc.

*Defendant*

St. Louis Airport Authority, A Department of the City of St. Louis

*Defendant - Appellant*

------------------------------

Bridgeton Landfill; American Nuclear Insurers

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2024
Filed: October 30, 2024
_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.
_____

ARNOLD, Circuit Judge.

Sisters Nikki Mazzocchio and Angela Kraus suspect that exposure to radioactive waste caused them to develop cancer. So they brought a federal "public liability action" under the Price-Anderson Act (PAA) against defendants that had handled the waste over the years, raising claims of negligence, negligence per se, strict liability, and civil conspiracy. The defendants moved to dismiss the complaint on the ground that federal law preempted the plaintiffs' state-law claims because federal nuclear dosage regulations provide the exclusive standard of care in a public liability action, and the plaintiffs didn't adequately plead that the defendants had violated those standards. The district court[1] disagreed and denied the motions to dismiss, and we granted the defendants permission to appeal. *See* 28 U.S.C. § 1292(b). We affirm.

At this stage of the proceedings, we accept the facts alleged in the complaint as true. *See Tholen v. Assist Am., Inc.*, 970 F.3d 979, 982 (8th Cir. 2020). Years ago a company named Mallinckrodt processed uranium in downtown St. Louis. It transported radioactive waste to a site that the defendant St. Louis Airport Authority now owns near St. Louis Lambert International Airport and Coldwater Creek. From there radioactive waste was transported to another site next to Coldwater Creek about a mile downstream. When defendant Cotter Corporation assumed control of the waste

_____

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

stored at the downstream site, it dried and transported much of the waste by rail and mixed the rest into soil that was dumped in a landfill. Cotter, which was later bought by defendant Commonwealth Edison Company, certified that the downstream site was decontaminated. Surveys of the area later showed otherwise. The plaintiffs allege that radioactive waste under the defendants' control contaminated Coldwater Creek and the surrounding properties, "including the areas where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked)."

"Congress enacted the PAA in 1957 to encourage private commercial nuclear research and energy production after it became clear that, without government intervention, the liability risks from nuclear material would stunt private development." *In re Cotter Corp., (N.S.L.)*, 22 F.4th 788, 794 (8th Cir. 2022). The PAA did so by providing "a system of private insurance, Government indemnification, and limited liability for claims for federal nuclear licensees." *See id.* Congress amended the PAA in 1988 to give federal courts jurisdiction over what it called a "public liability action" that "aris[es] out of or result[s] from a nuclear incident." *See id.*; 42 U.S.C. § 2210(n)(2). In turn, a "nuclear incident" is defined broadly to mean "any occurrence . . . causing . . . bodily injury, sickness, disease, or death . . . arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *See* 42 U.S.C. § 2014(q). With this amendment, Congress essentially "expressed an unmistakable preference for a federal forum" by giving federal courts original and removal jurisdiction to hear these claims. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484–85 (1999).

The defendants here maintain that Congress prefers not only a federal forum but also application of federal standards of care, such as federal nuclear dosage regulations governing how much radiation could be released into the environment. *See, e.g.*, 10 C.F. R. § 20.105 (1960), § 20.106 (1964). They emphasize that we have said "that the states possess no authority to regulate radiation hazards." *See N. States*

*Power Co. v. Minnesota*, 447 F.2d 1143, 1149–50 (8th Cir. 1971). They note, moreover, that the Supreme Court has similarly recognized that "the federal government maintains complete control of the safety and 'nuclear' aspects of energy generation," and so state regulations in the field of nuclear safety are preempted except where regulatory authority is "expressly ceded to the states." *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983). And they point to a section of the Atomic Energy Act that permits the Nuclear Regulatory Commission (NRC) to enter into agreements with a state to permit the state to regulate "for the protection of the public health and safety from radiation hazards." *See* 42 U.S.C. § 2021(b). That statute goes on to say that "[n]othing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards," *see id.* § 2021(k), which the defendants read to mean that states cannot regulate the hazards of radiation absent the requisite agreement, as here.

These authorities make clear that, absent an agreement between the NRC and a state, states cannot enact and enforce "before-the-fact nuclear safety" statutes or regulations. *See Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1098 (10th Cir. 2015) (Gorsuch, J.). But the question we face is whether the rules of state tort law, which might indirectly regulate in this field, are preempted as well. Both the Supreme Court and Congress have made clear that the answer is no.

Less than a year after it decided *Pac. Gas*, the Court had to decide whether federal law preempted a jury's award of punitive damages in state court to a plaintiff who was injured when plutonium escaped from a nuclear facility. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 241 (1984). It explained that, though "the federal government has occupied the entire field of nuclear safety concerns," *see id.* at 249 (quoting *Pac. Gas*, 461 U.S. at 212), Congress in enacting the PAA assumed that "state tort law would apply" when someone was injured in a nuclear accident. *See id.* at 252, 256. The Court observed that "[n]o doubt there is tension between the

-4-

conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on it own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them." *See id.* at 256.

The defendants emphasize that the Court in *Silkwood* wrestled with whether a plaintiff was entitled to a particular remedy under state law and not with whether state standards of care apply. But the Court spoke about the role of state tort law in broad terms, stating that "[i]t may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept." *See id.* So the Court was clear that state-law standards of negligence and strict liability would continue to play a role in compensating those injured in a nuclear accident, notwithstanding the federal government's occupation of the field of nuclear safety.

Congress enacted the PAA's 1988 amendments a few years after the Court decided *Silkwood*. And though Congress limited plaintiffs' ability to recover punitive damages after suffering an injury from a nuclear incident, *see* 42 U.S.C. § 2210(s), Congress did not repudiate the Court's understanding of the role that state tort law plays in a public liability action. In fact, Congress approved it. According to § 2014(ii), "A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." As one court put it, § 2014(ii) "merely affords a federal forum when a nuclear incident is 'assert[ed]' and provides a modest form of conflict preemption once the case is underway: normal

state law principles continue to govern unless they conflict with the rules found in § 2210." *See Cook*, 790 F.3d at 1095.

The defendants contend that state standards of care are inconsistent with the PAA and its "underlying policies, backdrop of federal preemption, and surrounding federal regulatory structure, which includes the federal dose standards." The defendants appear to be invoking "some brooding federal interest" rather than specific statutory provisions that conflict with state standards of care. *See Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (quoting *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (lead opinion of Gorsuch, J.)). One specific provision they do cite is § 2021(k)—the Atomic Energy Act provision that they interpret to suggest that states cannot regulate (absent an agreement with the NRC) radiation hazards. But § 2014(ii) says that a public liability action is deemed to arise under § 2210, and state substantive rules of decision are derived from state law unless they are "inconsistent with the provisions of such section." By using the phrase "such section," Congress was quite clearly referring to § 2210, and the defendants identify nothing in that section that even mentions federal dosage regulations, much less an indication that they take precedence over state standards of care. The defendants essentially ask us to disregard the plain statutory text and instead consider whether state law conflicts with other provisions relating to the regulation of nuclear safety, but we aren't at liberty to rewrite § 2014(ii) as the defendants ask. And the Court in *Silkwood* has already explained how exclusive federal regulatory power and state tort law can operate together.

It's worth mentioning that the NRC itself has said that it doesn't view compliance with its regulations as a safe harbor from state tort liability. *See In the Matter of A.N. Tschaeche*, 23 N.R.C. 461, 463–64 (1986). Though it recognized that it lacked authority to promulgate rules of evidence for state courts, it also noted the general principle that "compliance with government safety regulations is accepted as evidence of a person's having acted reasonably but is not considered conclusive proof

of the absence of negligence." *See id.* at 463. So even the NRC doesn't maintain that federal dosage regulations preempt state standards of care.[2]

We recognize that other circuits have held that federal law preempts state standards of care in a public liability action. *See, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) (collecting cases). We respectfully disagree with those circuits on this question, as they have not provided a persuasive reason to disregard § 2014(ii)'s plain text or the *Silkwood* Court's discussion of the role that state tort law plays in a public liability action. As Justice Gorsuch noted in *Cook*, "Often Congress entrusts before-the-fact regulation to a federal agency while leaving at least some room for after-the-fact state law tort suits. It has done so in the field of motor vehicle safety. It has done so in the field of medical devices. And all the statutory evidence before us suggests it has done the same thing here." *See Cook*, 790 F.3d at 1098. So we instead take a path different from our sister circuits, one lit by the statutory text and Supreme Court guidance.

For the reasons we've given, we agree with the district court's denial of the defendants' motion to dismiss.

Affirmed.

————————————————

---

[2]*See also Dillon v. Nissan Motor Co.*, 986 F.2d 263, 270 (8th Cir. 1993) (affirming that evidence of compliance with federal safety standards was relevant to a negligence claim) (citing *Ward v. City Nat'l Bank & Trust Co.*, 379 S.W.2d 614, 619 (Mo.1964)); *see generally Riegel v. Medtronic, Inc.*, 552 U.S. 312, 345 (2008) (Ginsburg, J., dissenting) ("Most States do not treat regulatory compliance as dispositive, but regard it as one factor to be taken into account by the jury.").